Slip Op 14 - 50

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| DIAMOND SAWBLADES MANUFACTURERS' COALITION, : : : | |
| Plaintiff, : : | |
| v. : : | Before: R. Kenton Musgrave, Senior Judge |
| UNITED STATES, : : | Court No. 13-00078 |
| Defendant, : : | |
| and : : | |
| BEJING GANG YAN DIAMOND PRODUCTS COMPANY, GANG YAN DIAMOND PRODUCTS, INC., and CLIFF INTERNATIONAL, LTD., : : : : : | |
| Defendant-Intervenors. : : | |

**OPINION AND ORDER**

[Remanding antidumping duty administrative review of diamond sawblades and parts thereof from the People's Republic of China.]

Dated: April 29, 2014

 *Daniel B. Pickard* and *Maureen E. Thorson*, Wiley Rein LLP, of Washington, D.C., for the plaintiff.

 *Alexander V. Sverdlov*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for the defendant. With him on the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White*, *Jr.*, Assistant Director. Of Counsel on the brief was *Nathaniel Halvorson*, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, D.C.

 *Jeffrey S. Neeley*, *Michael S. Holton*, and *Stephen W. Brophy*, Barnes, Richardson & Colburn, of Washington, D.C., for the defendant-intervenors.

Musgrave, Senior Judge: This opinion addresses two challenges of the plaintiff Diamond Sawblades Manufacturers' Coalition to *Diamond Sawblades and Parts Thereof from the People's Republic of China*, 78 Fed. Reg. 11143 (Feb. 15, 2013) (final results of 2009-2010 antidumping duty administrative review), *see* accompanying issues and decision memorandum ("I&D Memo") dated February 8, 2013, IAPDoc[1] 353, as administered by the defendant International Trade Administration of the Department of Commerce ("Commerce"). Both challenges concern the "ATM entity", a group of affiliated companies again "collapsed" for purposes of this review.[2]

The plaintiff's first claim is that the ATM entity should not have been determined, consistent with Import Administration Policy Bulletin 05.1 (Apr. 5, 2005) and administrative practice, to qualify for a separate antidumping duty rate apart from the "PRC-wide" non-market economy entity. The defendant requests voluntary remand to reconsider its determination in light of *Advanced Technology & Materials Co. v. United States*, 37 CIT ___, 938 F. Supp. 2d 1342

---

[1] The designation "IA" herein preceding the court's conventional citations to the public or confidential administrative record documents (PDoc or CDoc) are to those documents filed with IA Access, the Import Administration Antidumping and Countervailing Duty Centralized Electronic Service System. Reference to record documents without IA designation are to that part of the administrative record compiled prior to implementation of that system.

[2] More precisely, pursuant to 19 C.F.R. §351.401(f), *see also* 19 U.S.C. §1677(33) & 19 C.F.R. § 351.102(b)(3), Commerce will collapse two or more affiliated producers into a single entity where those producers have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities and Commerce concludes there is a significant potential for the manipulation of price or production. For purposes of the review at bar, Commerce collapsed into the "ATM entity" a number of affiliated respondents including the defendant-intervenors Beijing Gang Yan Diamond Products Co. ("BGY"), its direct parent, Advanced Technology & Materials Co., Ltd., and BGY's affiliate Cliff (Tianjin) International Ltd. (as apparently then-named). *See generally* Memorandum re: *Diamond Sawblades and Parts Thereof from the People's Republic of China: Determination to Include Additional Companies in the ATM Single Entity* (Nov. 30, 2011), IACDoc 103, IAPDoc 118.

(2013), *appeal docketed*, No. 14-1154 (Fed. Cir. Dec. 9, 2013), which it argues addresses the same issues contested here. The defendant-intervenors urge that the determination should be sustained as is, but Commerce "may request a remand (without confessing error) in order to reconsider its previous position", and when the "concern is substantial and legitimate, a remand is usually appropriate." *SKF USA, Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). Commerce's request appears substantial and legitimate, and consistent with the objective of "secur[ing] the just, speedy, and inexpensive determination of every action and proceeding", USCIT R. 1, it must be permitted.

    The plaintiff's second claim concerns Commerce's decision not to collapse the state-owned enterprise "China Iron & Steel Research Institute" as apparently re-named ("CISRI") within the ATM entity. Commerce noted that CISRI itself is not a producer of subject merchandise, *see* 19 C.F.R. §351.401(f), and observed that it discerned no information on the record showing that CISRI manipulated the prices or export decisions with regards to the ATM entity's sales of subject merchandise, or that CISRI possesses significant potential to manipulate export or pricing decisions of the ATM entity, or that CISRI's employees directed or could have directed the ATM entity's employees to make certain pricing and/or export decisions. In the absence of such information, Commerce stated, it could not find that significant potential for manipulation of price exists. I&D Memo at 16.

    The plaintiff argues that since Commerce's response brief at bar does not offer a defense of this collapsing issue, Commerce's rationale for not collapsing CISRI with the ATM entity is "unclear" and that the matter should therefore be remanded for further explanation and

consideration. The plaintiff points out that despite the statement in the I&D Memo at page 16 that Commerce's practice is only to collapse companies with production assets, Commerce has collapsed non-producing companies in the past where the facts of record show that such companies have the ability to manipulate pricing and production among producers/exporters of subject merchandise -- *see Honey from Argentina*, 69 Fed. Reg. 30283 (May 27, 2004), and *Certain Warmwater Shrimp From Brazil*, 69 Fed. Reg. 76910 (Dec. 23, 2004) -- wherein Commerce collapsed affiliated resellers with one another and exporters with related processors -- and Commerce's authority to do so has been affirmed. *See*, *e.g.*, *Hontex Enterprises, Inc. v. United States*, 28 CIT 1000, 342 F. Supp. 2d 1225 (2004). These instances, the plaintiff argues, demonstrate that Commerce interprets its regulation flexibly, with the goal of ensuring that the relationships between parties, regardless of how their production assets are distributed, cannot be manipulated to the detriment of trade orders. Further, the plaintiffs argue, Commerce has in fact done so in this very instance, insofar as the collapsed ATM entity includes an entity not found to have either exported subject merchandise or had facilities capable of producing subject merchandise. Pl's Br. at 22-23. The plaintiff argues Commerce should collapse CISRI with the ATM entity as well, since, contrary to the administrative finding of a lack of evidence to suggest that CISRI possesses a significant potential to manipulate pricing and export decisions among ATM entity members, there is "clearly such information in the record" according to the plaintiff, as restated in its brief.

The defendant-intervenors oppose remand of this issue, arguing that CISRI is not an exporter or producer and that the cases the plaintiff relies upon are distinguishable. The plaintiff

replies that the defendant-intervenors' arguments, in defense of Commerce's rationale, extends beyond the bounds of what Commerce has expressed on the issue to this point.

Without opining on the parties' respective positions on the particular collapsing issue at bar, the court previously recognized overlap in the factual determinations relevant to the separate rate and collapsing issues. *See*, *e.g.*, *Advanced Tech.*, 938 F. Supp. 2d at 1347-48. If upon remand the collapsing issue remains live after reconsideration of the separate issue, Commerce is requested to address more fully the parties' respective positions as articulated in their briefs to this court.

*Conclusion*

In accordance with the foregoing, *Diamond Sawblades and Parts Thereof from the People's Republic of China*, 78 Fed. Reg. 11143 (Feb. 15, 2013) (final results of antidumping duty administrative review; 2009-2010), shall be, and hereby is, remanded to the International Trade Administration, U.S. Department of Commerce for further proceedings consistent with this opinion. The results of remand shall be due 60 days after a final decision in *Advanced Technology & Materials Co. v. United States*, No. 14-1154 (Fed. Cir. Dec. 9, 2013), comments on the remand results shall be due 30 days thereafter, with any rebuttal due 15 days after any such comments filed. **So ordered**.

                                                     /s/ R. Kenton Musgrave
                                                     R. Kenton Musgrave, Senior Judge

Dated: April 29, 2014
       New York, New York